OPINION
Appellant Christina Daffron ("Daffron") brings this appeal from the judgment of the Allen County Court of Common Pleas, Juvenile Division granting permanent custody of Gage Daffron ("Gage") to appellee Allen County Children Services Board (CSB).
Gage was born to Christina and Terry Daffron on September 9, 1998.[1]
On July 2, 1999, CSB filed a complaint alleging that Gage was an abused child and removed him from the home. The complaint alleged that Gage was malnourished and suffering from an infected toe without required medical attention. Additionally, the parents were unable to provide an explanation as to how Gage received a skull fracture. Gage was adjudicated an abused child pursuant to an agreed entry on August 25, 1999. As a result, Gage was placed in the temporary custody of CSB. Daffron was convicted of abuse of Gage for malnourishment and failure to seek medical treatment for an infected toe. Daffron was incarcerated from August 31, 1999 to December 2, 1999. At that time, Daffron was pregnant with her third child, Mason Bell, who was born on February 22, 2000.
The case plan, filed on October 21, 1999, for Gage indicated that Daffron would do the following: 1. Assure that Gage's basic needs are met; 2. Provide all basic and medical needs; 3. Apply for government assistance programs; 4. Find employment; 5. Provide transportation to all medical appointments; and 6. Participate and complete a parent education program. On December 2, 1999, Daffron was released from jail and contacted CSB about setting up counseling sessions. Due to complications with her pregnancy, Daffron was unable to attend the counseling sessions.
On December 10, 1999, CSB filed a semi-annual review of the case. In the review, CSB stated that the agency had filed for permanent custody on December 6, 1999, and that the new goal of the case plan was to take permanent custody of Gage and terminate Daffron's parental rights. The basis for CSB's decision was that neither parent had completed any of the case plan goals at that time.
On January 11, 2000, CSB filed a motion for permanent custody. A hearing was held on the motion on August 7, 2000. At the hearing, the testimony of the various CSB agents was that Daffron had not completed any of the case plan goals prior to the filing for permanent custody. The various agents also testified that they were aware that for three months of that time, Daffron was incarcerated for her abuse of Gage that resulted in his initial removal. During Daffron's incarceration, CSB arranged for one visit with Gage. The agents then testified that they were aware that Daffron's pregnancy with Mason was determined to be a high risk pregnancy and had complications. The agents also testified that since the motion for permanent custody was filed in January, Daffron had completed the parenting class from Tri-Star and had entered counseling. Additionally, Daffron had attended a majority of the visits with Gage set up by CSB. The agents also testified that Daffron did not seem to interact with Gage during that time as she was busy with Mason and did not make Gage pick up the toys that Gage played with at the visitation site.
Daffron testified at the hearing that she had found an apartment and had been living there since the beginning of January. Daffron testified that she was employed as a cashier at the Dairy Mart. She also testified that she had completed two parenting classes since January and had begun counseling on March 22, 2000. Daffron also testified that she had purchased a car and had applied for government assistance. Daffron stated that she realized that she had made mistakes with Gage and had matured a great deal during her time in jail. Leah Shaw, Daffron's paternal grandmother, also testified that Daffron had matured while incarcerated. Shaw also testified that she had seen Daffron with Gage and believed that Daffron could properly care for him. At the close of the evidence, the trial court granted permanent custody of Gage to CSB.
Daffron raises the following assignment of error.
 The trial court erred in finding that CSB proved by clear and convincing evidence pursuant to R.C. 2151.414 that Daffron's parental rights be terminated.
R.C. 2151.414 states in pertinent part:
 (E) In determining at a hearing . . . whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence . . . that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * *
 (3) The parent committed any abuse . . . against the child, caused the child to suffer any neglect . . . or allowed the child to suffer any neglect . . . between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody.
* * *
 (6) The parent violated [R.C. 2903.11-13, 2903.16, 2903.21, 2903.34, 2905.01-05, 2907.02-09, 2907.12, 2907.21-23, 2907.25, 2907.31-323, 2911.01-02, 2911.11-12, 2919.12, 2919.22, 2919.24-25, 2923.12-13, 2923.161, 2925.02 or 3716.11] and the child or a sibling of the child was a victim of the violation or the parent violated [R.C. 2903.01-04], a sibling of the child was the victim of the violation, and the parent who committed the violation poses an ongoing danger to the child or a sibling of the child.
* * *
 (11) The parent committed abuse . . . against the child or caused or allowed the child to suffer neglect . . . and a sibling of the child previously has been permanently removed from the home of the child's parents because the parent abused or neglected the sibling.
 In this case, the trial court determined that all of the above factors, except the first, applied to Daffron.
The first factor is the ability of the parents to remedy the problems causing the initial removal of the child within a reasonable period of time. The trial court ruled that CSB made reasonable efforts to return the child to his parents. However, the trial court did not find that all reasonable efforts were made as set forth in R.C. 2151.414(E)(1). The record also does not support this position. According to the testimony of the CSB agents, very few efforts were made to return this child to Daffron. Less than one week after Daffron's release from jail, CSB had revised the case plan to reflect an intention to take permanent custody of Gage. The basis for this change was that Daffron had not completed any of the goals in the original case plan. However, these goals would have been impossible to complete while incarcerated. At the time of the filing of the motion for permanent custody, Daffron had completed one of the goals in that she had obtained an apartment. Subsequent to the filing for the motion, Daffron had completed most, if not all of the goals set forth in the case plan. Based upon the testimony on the record, it appears that once CSB determined it would be in Gage's best interest to be adopted by his foster parents, no effort was made to aid Daffron in remedying the original problems.
The first factor cited by the trial court in regards to the mother was that she had violated one of the listed statutes. The record indicates that Daffron was incarcerated for three months for the abuse of Gage that resulted in his removal from the home. However, the record does not indicate which offense Daffron committed. Since the statute requires that certain statutes be violated and the record is silent as to the underlying offense, this finding is not supported by the record.
The trial court also determined that mother abused or neglected Gage between the original offense and the filing for permanent custody. During that time, the only contact Daffron had with Gage was supervised visits at CSB. No testimony was presented that Gage's basic needs were not being met or that Daffron mistreated him during that time period. Thus, this finding is not supported by the evidence.
Finally, the trial court determined that the mother had abused Gage and that a sibling had been permanently removed from the home due to abuse or neglect. The record of the abuse is the agreed entry that resulted from the original complaint and admits that Daffron did abuse Gage by failing to seek medical attention and failing to provide adequate nourishment. CSB agents testified that Daffron's parental rights to Gage's older brother were terminated due to abuse and neglect. Thus, the record supports this finding. Since the statute only requires that one factor be present to justify termination of parental rights, the trial court did not abuse its discretion in deciding to terminate Daffron's parental rights. The assignment of error is overruled.
The judgment of the Allen County Court of Common Pleas, Juvenile Division is affirmed.
Judgment Affirmed.
 WALTERS, P.J. and SHAW, J., concur.
[1] Daffron's date of birth is August 30, 1980.